RECEIVED
NOV 1 3 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| WARD 5 WATERWORKS DISTRICT NO.1 OF EVANGELINE PARISH | CIVIL ACTION NO. 06-2151 |
| | JUDGE DOHERTY |
| VERSUS | MAGISTRATE JUDGE METHVIN |
| LAYNE CHRISTENSEN COMPANY (FORMERLY KNOWN AS LAYNE, INC.) | |

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. 14], filed by defendant, Layne Christensen Company ("Layne").[1] The motion is opposed by plaintiff, Ward 5 Waterworks District No. 1 of Evangeline Parish ("Ward 5") [Doc. 18]. Layne filed a reply brief [Doc. 26], as well as a supplemental memorandum in support of its motion for summary judgment [Doc. 28]. For the following reasons, Layne's motion for summary judgment is **GRANTED**.

## BACKGROUND

A review of the pleadings and submissions by Layne and Ward 5 reveals the following uncontested facts: On January 3, 1996, Ward 5 entered into an agreement with Layne to construct a water well ("the well") on property owned by Evangeline Parish. [Docs. 14-8, 18-2]. The initial construction of the well was completed on March 25, 1996. [Doc. 14-2]. On April 18, 1996, the well was registered with the Louisiana Department of Transportation and

---

[1] Plaintiff originally named Layne Christensen Company and Layne, Inc. as defendants in this matter [Doc. 1]; however, Layne, Inc. has been terminated as a defendant. Thus, Layne Christensen Company (Layne) is the only defendant in this matter.

Development ("DOTD"). [Doc. 14-8]. The registration certificate designates Ward 5 as the "Well Owner" and indicates the well was operating at or above the proposed average daily pumping rate as of April 4, 1996. [Doc. 14-8]. Although a permanent pump had not yet been selected at that time, the well was fully operational through the use of a temporary pump. [Docs. 14-2, 14-8]. Possession of the well was permanently tendered to Ward 5 on August 7, 1996, when Layne installed a permanent pump on the well, replacing the temporary pump. [Docs. 14-2, 14-8]. No further work was performed on the well by Layne pursuant to the January 3, 1996 agreement. [Docs. 14-2, 14-8].

On October 12, 2006, Ward 5 filed suit against Layne for unspecified damages arising from negligence (regarding defective design, manufacture, and installation of the well), products liability, and breach of contract. [Doc. 1]. In the original petition, Ward 5 indicates Ward 5 and Layne entered into a contract "in or about the year 1996" for Layne to "supply and install a water well, pump, filtering system, and other items and equipment" referred to as "the well." Ward 5 further alleges in the petition that the primary purpose of the well was to enable the water district to deliver clean, filtered drinking water to its customers; however, "it has recently come to the attention" of the water district that the well is malfunctioning as the result of improper and/or defective design and/or installation."

Layne filed the instant motion for summary judgment on grounds that the entirety of Ward 5's claims[2] are barred under the ten-year statutory peremption codified in LA. REV. STAT.

---

[2] There is no issue before this Court that the peremption period found in LA. REV. STAT. ANN. § 9:2772 (1996) is inapplicable to the *entirety* of the allegations in Ward 5's complaint. Ward 5's claims include negligence in the design, manufacture, and installation of the well; products liability; and breach of contract. [Doc. 1]. Ward 5 has not raised the issue as to whether any of the individual claims might fall outside the scope of LA. REV. STAT. ANN. § 9:2772(B) (1996) ("[A]ny deficiency in the . . . construction of any improvement to immovable property; (2) For damage to property, movable or immovable, arising out of any such deficiency; (3) For injury to the person or for wrongful death arising out of any such deficiency; and (4) Any action brought against a person for the action or failure to act of his employees.").

2

ANN. § 9:2772. [Doc. 14-1]. Attached to Layne's Motion for Summary Judgment is an affidavit from one of its employees, Marlon Cobb. [Doc. 14-6]. Cobb attests one of his crewmembers installed the permanent pump on the well on August 7, 1996, at which time the well was fully operational and was "permanently tendered to Ward 5 Waterworks District No. 1..."

In opposition, Ward 5 agrees as to the relevance of the ten year peremptive period under LA. REV. STAT. ANN. §9:2772 (1996), but argues a genuine issue of material fact exists as to the determination of the *date* upon which the ten year peremptive period commenced. In support of its argument, Ward 5 submits an *unsigned letter* dated November 20, 1997 from Wesley McIntosh (apparently the president of Ward 5) to Layne. The letter indicates "substantial completion for this project was recorded on 12/27/97;" however, there is a line through "97," and the number, "96," is apparently hand-written above "97." Additionally, the language in the unsigned letter provides, "[i]n accordance with the contract all work has a one year warranty from [that] completion date." [Doc. 18-1, Ex. A]. In the letter, Ward 5 requests that work be completed on "items that need attention:" hooking up a prelube line, replacement of a water sampling tap, checking the oil level in the motor, and touch-up painting. There is no mention in the letter of defective installation or malfunction of the pump. Moreover, there is no notice provided in the letter that the well had "problems shortly after installation" or that the well did "not operate correctly" or that "the water [was] of poor quality and unexceptable [sic] . . ." [Doc. 18-1 Ex. A].

In its reply brief, Layne reiterates that recordation of "substantial completion of the work" and whether or not there was work left to be done on the well are irrelevant issues. Rather, Layne argues the important factor under Section 9:2772 is whether there was recordation of "acceptance of the work." This factor dictates which subsection of the statute is at issue and

3

when the peremptive period began to run. To assist the Court in determining whether Ward 5 ever recorded its "acceptance of the work," Layne enlisted the services of Anthony B. Marks, Deputy Clerk of Court for Evangeline Parish, Louisiana, who submitted an affidavit wherein Mr. Marks attests that he "conducted a thorough search of the mortgage records of Evangeline Parish related to the water well and pump installed by Layne, Inc. for Ward 5 Water Works District No. 1 of Evangeline Parish," and that "at no time during the aforementioned search did Affiant locate an Acceptance of Work that was filed in connection with the water well and pump installed by Layne, Inc. for Ward 5 Water Works District No.1 of Evangeline Parish." [Doc. 29, Exh. Part 1]. Mr. Marks's affidavit is uncontroverted.

These matters are now before this Court.

## LAW

### A. Standard of Review

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).

"The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case." *Capitol Indem. Corp. v. U.S.*, 452 F.3d 428, 430 (5th Cir. 2006). "Summary judgment is properly granted if the record does not contain appropriate summary judgment evidence which would sustain a finding in the nonmovant's favor on any issue as to which the nonmovant would bear the burden of proof at trial." *Id.* at 430-31. As noted by the Fifth Circuit:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal quotations omitted).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "the court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party." *Id.* In evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence

5

supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

**B.     Substantive Law**

    **1.     *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).**

As jurisdiction in this matter is premised upon 28 U.S.C. § 1332 (diversity of citizenship), Louisiana law governs the substantive issues of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). As such, the Court is duty-bound to apply Louisiana law. The Fifth Circuit's guidance to District Courts in this endeavor is as follows:

> To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court. In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case. . . .
>
> [The court must] employ the appropriate Louisiana civilian methodology to decide the issues presented the way that [the court] believe[s] the Supreme Court of Louisiana would decide them. Under Louisiana's Civil Code, the only authoritative sources of law are legislation and custom. Thus, in Louisiana, courts must look first and foremost to the state's primary sources of law: the state's constitution, codes, and statutes. As we have previously recognized, the primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts. Indeed, *stare decisis* is foreign to the Civil Law, including Louisiana. Jurisprudence, even when so cohesive and entrenched as to rise to the level of *jurisprudence constante* is merely a secondary law source. Therefore, while it is true that we will not disregard Louisiana appellate court decisions unless we are convinced by other persuasive data that the highest court of the state would decide otherwise, particularly if numerous decisions are in accord on a given issue - the so-called *jurisprudence constante* - we are not strictly bound by them.

*Am. Int'l Speciality Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (internal citations and quotations omitted).

6

2. **Peremption under LA. REV. STAT. ANN. §9:2772 (1996).**

Under Louisiana law, a person's right to assert a cause of action may be lost with the passage of time by the operation of either peremption or prescription. The Louisiana Civil Code provides, "Prescription is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of a peremptive period." LA. CIV. CODE art. 3458. Thus, when the peremptive period has run, the cause of action itself is extinguished unless timely exercised. *State. v. McInnis Bros. Const.*, 701 So. 2d 937, 939 (La. 1997). Peremption may be pleaded or it may be supplied by a court on its own motion at any time prior to final judgment. LA. CIV. CODE art. 3460. Peremption may not be renounced, interrupted, or suspended. LA. CIV. CODE art. 3461. On the other hand, liberative prescription is a mode of barring actions as a result for inaction for a period of time. LA. CIV. CODE art. 3447. Thus, while peremption "destroys the right itself," prescription "merely prevents the enforcement of a right such that a natural obligation remains after prescription has run." *McInnis Bros. Constr.*, 701 So. 2d at 939.

LA. REV. STAT. ANN. §9:2772 (1996) provides, in pertinent part:

A. No action, whether ex contractu, ex delicto, or otherwise, including, but not limited to, an action for failure to warn, to recover on a contract or to recover damages shall be brought against any person performing or furnishing land surveying services, as such term is defined in the first paragraph of R.S. 37:682(9), including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of an improvement to immovable property:

(1) More than *ten years after the date of registry in the mortgage office of acceptance of the work by owner*; or

(2) if no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, *more than ten years after the improvement has been thus occupied by the owner*; . . .

7

  B. The causes which are preempted within the time described above include *any* action:

   (1) For any deficiency in the . . . construction of any improvement to immovable property;

   (2) For damage to property, movable or immovable, arising out of any such deficiency;

   (3) For injury to the person or for wrongful death arising out of any such deficiency; and

   (4) Any action brought against a person for the action or failure to act of his employees.

(emphasis added).

  The Louisiana legislature enacted La. R.S. 9:2772 in order "to prevent architects and contractors from being indefinitely liable for past construction projects." *Burmaster v. Gravity Drainage District No. 2*, 366 So.2d 1381, 1387 (La.1978). To achieve this purpose, La. R.S. 9:2772 establishes a definite time from which the ten-year period starts to run which is "not dependent on the discovery of the defect." *Lasseigne v. Schouest & Sons, Builders*, 563 So.2d 371, 373 (La. App. 1st Cir. 1990). In *Guidry v. Sunset Recreation Club, Inc.*, 571 So.2d 870, 872 (La. App. 3rd Cir. 1990), *writ denied*, 577 So. 2d 14 (La.), *reconsideration denied*, 578 So. 2d 916 (La. 1991), the court observed, "We find the language of [La. Rev. Stat. Ann. §9:2772] to be clear and precise. If an acceptance of the construction is recorded within six months of occupancy, the peremptive period commences on the date the acceptance is recorded. On the other hand, if no acceptance is recorded within six months of occupancy, the peremptive period commences on the date of *occupancy*." Installation of equipment may constitute "partial occupancy" under La. Rev. Stat. Ann. §9:2772. *Lauren Plaza Assocs. v. Gordon H. Kolb Devs.*, 853 F. Supp. 941, 843-844 (E.D. La. 1994)("To defer the tolling of peremption until occupancy

after substantial completion or after the last work on the project was performed would directly contravene the provisions of the statute"). "[A]ny repairs or promises to repair alleged to have been made . . . would not interrupt the ten year peremptive period established by LSA-R.S. 9:2772." *Lasseigne*, 563 So.2d at 373.[3]

C.  **Discussion**

The parties agree LA. REV. STAT. ANN. § 9:2772 (1996) governs this matter.[4] The statute provides "[n]o action . . . shall be brought . . . (1) [m]ore than ten years after the *date of registry* in the mortgage office of acceptance of the work by owner; or (2) [i]f no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, *in whole or in part*, more than ten years after the improvement *has been thus occupied by the owner*. . ." LA. REV. STAT. ANN. §9:2772 (1996) (emphasis added).

1.  **Peremption under LA. REV. STAT. ANN. § 9:2772(A)(1) (1996).**

Layne argues Ward 5 never filed an "**acceptance of the work**" in the Evangeline Parish mortgage office and attaches an affidavit from Anthony B. Marks, the Deputy Clerk of Court for Evangeline Parish, who sates that he conducted a thorough search of the Evangeline Parish Mortgage Records and found no "acceptance of work" recorded by Ward 5 in connection with

---

[3] Notably, the parties have not cited this Court to specific Louisiana State Supreme Court jurisprudence, and this Court's independent research revealed no Louisiana State Supreme Court matters directly addressing the issues presented herein. Nevertheless, this Court finds *Guidry, Lauren Plaza, and Lasseigne* illustrative.

[4] LA. REV. STAT. ANN. § 9:2772 currently authorizes a five-year peremption period as opposed to the ten-year peremptive period under the version of the statute which was effective in 1996. *Compare* LA. REV. STAT. ANN. § 9:2772(A)(1)(2) (1996) ("[M]ore than *ten* years after the improvement has been thus occupied by the owner . . .") (emphasis added), *with* LA. REV. STAT. ANN. § 9:2772(A)(1)(b) (2007) ("[M]ore than *five* years after the improvement has been thus occupied by the owner.") (emphasis added). The parties in this matter agree the ten-year peremptive period applies to the facts before this Court. Because defendant's Memorandum in Support of Motion for Summary Judgment [Doc. 14-2] and plaintiff's Memorandum in Opposition to Motion for Summary Judgment [Doc. 18-1] both rely on the ten-year peremption period under the 1996 version of the statute, this Court will assume for the purposes of this motion neither party has issue with the prospective nature of the statute as amended. *See Curtis v. Branton Indus., Inc.*, 944 So.2d 716 (La. App. 3rd Cir. 2006).

9

the well and pump installed by Layne.[5] In its opposition brief, Ward 5 submits what appears to be a collection of documents that are copies of those contained in the Evangeline Parish mortgage office related to the immovable property at issue. A review of the documents also reveals no "**acceptance of the work**," which further confirms that Ward 5 never filed such a notice. Ward 5 submits an unsigned November 20, 1997 letter indicating, "the **substantial completion** for this project was recorded on 12/27/97," and the "97" entry has what appears to be a hand-written line through "97" and a hand-written entry of "96" above the date. Considering the foregoing, as there is no evidence that Ward 5 recorded an "**acceptance of the work**," this Court concludes LA. REV. STAT. ANN. §9:2772(A)(1) is inapplicable. However, for the reasons that follow, this Court finds Layne has carried its burden of establishing entitlement to the relief it requests pursuant to LA. REV. STAT. ANN. §9:2772(A)(2)("If no such acceptance is recorded within six months from the date the owner has *occupied or taken possession* of the improvement, *in whole or in part, more than ten years after the improvement has been thus occupied by the owner. . .*") (emphasis added).

2. **Peremption under LA. REV. STAT. ANN. § 9:2772(A)(2) (1996).**

Layne argues Ward 5's claims are perempted because they are being made more than ten years after Ward 5 "possess[ed]" the well," relying on LA. REV. STAT. ANN. §9:2772(A)(2) (1996). In support of this position, Layne attaches an affidavit from one of its employees, Marlon Cobb, who attests the well has been occupied by Ward 5 since no later than August 7, 1996, the date Ward 5 took over the permanent possession of the well. [Doc. 14-6]. Cobb attests a member of his crew installed the permanent pump on the well on August 7, 1996, and

---

[5] This court notes the registration filed with DOTD, but neither party argues, or otherwise suggests, such a filing meets the statutory requirement for registering an acceptance of work with the mortgage office.

that "all work required by the January 3, 1996 agreement was complete and the well in question was fully operational. Layne performed no additional work on the well in question after that date and possession of said well was permanently tendered to Ward 5 Waterworks District No. 1 on August 7, 1996." [Doc. 14-6]. Mr. Cobb's affidavit is uncontroverted.

In response, Ward 5 argues *not* whether and when the well was *occupied* or *possessed* under LA. REV. STAT. ANN. §9:2772(A)(2); *rather*, Ward 5 argues "there is a serious issue of fact . . . concerning when the water well was *actually completed*, whether the *substantial completion* was recorded, and whether the 10 year preemption [sic] would apply in light of the fact that *there was work to be completed* on this well as late as November 20, 1997." [Doc. 18-1] (emphasis added).

LA. REV. STAT. ANN. §9:2772(A)(2) clearly provides on its face that the peremptive period commences on the date the owner *"occupie[s] or take[s] possession of the improvement, in whole or in part. . ."* There is *no* reference to any date on which an improvement is substantially or actually completed. Ward 5 has cited this Court to no authority establishing the peremptive period commences on any date other than the date the improvement is occupied or possessed, and this court has found none. The "commencement of the peremptive period does not hinge on whether the construction is fully completed or substantially completed but rather the date when *occupancy* begins or *possession* is taken." *Guidry*, 571 So. 2d at 873.

Based on a review of the parties' submissions in the present case, there is no dispute that: (1) the initial construction of the well was completed on March 25, 1996; (2) the well was operational as of April 4, 1996 through the use of a temporary pump; (3) the pump was registered with the Louisiana DOTD on April 18, 1996; (4) Layne tendered permanent possession of the well to Ward 5 on August 7, 1996, when Layne installed a permanent pump on

11

the well in place of the temporary pump; (5) no further work was performed on the well by Layne pursuant to the January 3, 1996 agreement; and (6) the well was fully operational as of August 7, 1996, when Ward 5 was tendered permanent possession of the well and all work required under the January 3, 1996 agreement was complete.

October 12, 2006 – the date on which Ward 5 filed its petition – unquestionably falls outside of the ten-year peremptive period which could have commenced no later than August 7, 1996, the date Ward 5 tendered permanent possession of the well pursuant to the uncontroverted affidavit testimony of Mr. Cobb. Thus, while there may have been an earlier date of occupancy or possession in "whole or in part" by Ward 5, the latest date upon which peremption commenced, based on the submissions presented by the parties to this Court, was August 7, 1996.[6]

Further, plaintiff's assertion that repairs yet to be completed on the well might toll the peremption period lacks merit. *Lasseigne v. Schouest & Sons, Builders*, 563 So.2d 371, 373 (La. App. 1st Cir. 1990) ("[A]ny repairs or promises to repair alleged to have been made . . . would not interrupt the ten year peremptive period established by LSA-R.S. 9:2772.").

In short, Layne filed its motion for summary judgment arguing peremption under LA. REV. STAT. ANN. §9:2772 (1996). Ward 5 does not dispute the well was completed on March 25, 1996 and fully operational by April 4, 1996. Ward 5's response, at most, indicates that a "notice of substantial completion" of work – rather than a "notice of acceptance of work" – *may* have been recorded in the mortgage records on December 27, 1996. Ward 5's opposition fails to rebut Layne's argument that Ward 5 occupied or took possession of the well, "in whole or in

---

[6] Again, at best, Ward 5 has provided the Court with a letter dated almost one year beyond the alleged "substantial completion" date. The letter does not meet the admissibility requirements set forth by Federal Rule of Civil Procedure 56(e). Even if the letter could be considered by this Court, it would not alter the outcome of the peremption analysis in this case.

part," before October 12, 1996. LA. REV. STAT. ANN. §9:2772 (1996). As such, Ward 5 fails to carry its burden of showing a genuine issue of material fact exists as to the peremption of its claims, which must be dismissed in their entirety pursuant to La. R.S. 9:2772.

Considering the foregoing, Layne's motion for summary judgment [Doc. 14] is hereby GRANTED, and this matter is dismissed with prejudice[7] in its entirety.

THUS DONE AND SIGNED this 13 day of November, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[7] See *Guidry*, 571 So. 2d at 873 (where third-party demand was filed more than ten years after date of occupancy, third-party demand was perempted and dismissal *with prejudice* was required).

13